[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 34, (d.o.b. 7/3/67) whose birth name is Evonsky, and the defendant husband, 31, (d.o.b. 3/14/70) mated on June 18, 1994 in Weston, Connecticut. Jurisdiction is provided by the plaintiffs continuous residence in this state for over a year prior to beginning CT Page 2089 this action for dissolution of their marriage. The parties have two children issue of their marriage, Tyler born August 29, 1994 and Nicholas born June 21, 1998 and are the only children born to the plaintiff since the marriage. The parties filed a written stipulation regarding custody and visitation which the court finds to be in the best interests of the children and it will be ordered in the judgment.
Both parties are in good health. Both are high school graduates. The plaintiff has some college credits while the defendant attended West Virginia Wesleyan for two years, and subsequently attended Fairfield U., Bridgeport Engineering Institute and an automotive training school located in West Haven.
When mated they were tenants in 45 Toilsome Avenue, Stamford, a two family house, which they purchased in 1995 for $165,000. The down payment of $50,000 which was originally saved and set aside by the defendant's parents for their son's college expenses was the source. The upstairs apartment was renovated in 1996 and the downstairs apartment was renovated in 1997. The defendant's parents advanced between $40,000 and $45,000 to assist with the completion of the renovations. In March, 1999 they submitted a loan application (Defendant's Exhibit B) and on April 22, 1999 executed a note and mortgage in favor of Newtown Savings Bank for $142,000 (Defendant's Exhibit A). The parties were required to pay, in full, charge accounts at Macy's, First USA, Fleet Bank and Chase Platinum Visa totaling $8,212.28 and to close the accounts. They received a net of $16,429.89 from the closing (Defendant's Exhibit C). Shortly thereafter the plaintiff opened a sole account in her name and transferred $10,000 to said account. The defendant was never told about this new account.
The parties separated for the first time in March, 1999 for two weeks, reconciled for a month, and the final separation then occurred when the defendant moved out. The causes of the marriage breakdown can be found in ihe plaintiffs inability to live within the bounds of a reasonable budget and the defendant's excessive drinking and depression. The plaintiff used an American Express card on which the defendant was primary holder to incur several thousand dollars of charges until the card was suspended. In the billing period ending December 16, 1999 she charged $5,545.06 on the regular account and an additional $3,143.21 on "Sign Travel. On October 10, 1999 the plaintiff filled in a Discover credit application in the defendant's name, signed his name and listed herself as an additional authorized user (Defendant's Exhibit E). The defendant discovered the deception when a bill addressed to him from the credit card issuer was delivered to him. The bill was for a balance exceeding $4,000. Both the Amex and the Discover accounts appear in the defendant's credit report but not in the plaintiffs report. CT Page 2090
The defendant has been employed by Darien Auto Center. In 1998 he brought to his father's attention that the owner wanted to sell the business. His father purchased the business in the name of R. Gould Associates, LLC (Plaintiffs Exhibit #2). The defendant was named a member with 20% interest although he paid nothing toward the purchase, subject to a buy-out option in favor of his father for $200 (Defendant's Exhibit G). On July 15, 1999 the father exercised the option (Defendant's Exhibit H). The court accepts the father's testimony that he exercised the option due to his son's poor performance at the shop. The defendant currently is paid $1,030 weekly gross and after FICA and taxes of $220.66 has a net of $809.34. He is allowing the business to deduct $150 weekly to repay various advances made to him.
The plaintiff is employed part time as an office assistant receiving a weekly gross of $260 and $190 net after taxes. She also collects $325 weekly rent, netting $200 after maintenance and utilities. There are no pendente orders but the defendant has been paying $450 weekly voluntary support and has been writing checks on the Darien Auto Center account for various expenses connected with the children's activities, first obtaining his father's permission for each check. His employer provides medical insurance without cost to him.
The parties disagree regarding the fair market value of the real estate. The plaintiffs affidavit states $250,000 while the defendant's states $330,000. No expert testimony was offered but it was uncontradicted that the bank found it to have a market value of $280,000 when the parcel was mortgaged to it. The court concludes that the present value is $300,000 and is subject to a mortgage balance of about $138,000. The parties agreed that the Suburban vehicle shall be awarded to the plaintiff who shall pay the remaining debt of about $300 still due the lien holder.
The court has heard the evidence, evaluated the credibility of the witnesses and listened to final argument and has considered the applicable statutes and case law in entering the following decree:
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Each party is declared to be unmated.
 2. The parties' stipulation dated February 14, 2002 and filed on said day is found to be in the best interests of the children, it is approved and so ordered, quoting same:
"The parties agree that there is joint legal custody, and the plaintiff wife shall be the residential parent, and the defendant father shall have visitation from Friday at 7:00 p.m. until Sunday at 4:00 p.m. on CT Page 2091 alternating weekends, and shall have weekday visitations as the parties may agree, and holiday visitations shall be alternated, with Christmas Day being shared, and the defendant shall have the opportunity to have the boys with him for at least one week during the summer."
 3. Child support is governed by the guidelines and the court finds it appropriate to deviate from the presumptive amount by application of Section 46b-215a-3 (b)(5)(A)(B) and (C) so the following unallocated order may be entered.
 4. The defendant shall pay to the plaintiff unallocated alimony and child support of $450 weekly for three years or upon the sooner death of either party, the rematage or cohabitation of the plaintiff or future court order. The term shall be nonmodifiable but the amount is modifiable. Upon termination of alimony a child support order shall be entered. A wage withholding order is entered.
 5. The defendant shall execute a quit claim deed transferring his interest in the marital home to the plaintiff who shall simultaneously execute a mortgage note and mortgage deed creating a second mortgage in favor of the defendant in the principal amount of $70,000, payable in full in three years or sooner upon the remarriage or cohabitation of the plaintiff, together with simple interest at 3%. The forms shall contain the usual provisions and shall be prepared by defendant at his expense. Any dispute arising between the parties in effecting this order shall be submitted to the court for articulation. Failure to pay the note when due shall not be enforced by allegation of contempt but shall be collected as provided by law e.g. foreclosure. The contents of the marital home as presently found therein are awarded to the plaintiff as her sole property.
 6. The defendant shall provide medical insurance for the minors which is available through his employment without expense to him. Sec. 46b-84
(e) shall apply to the filing of claims.
 7. Sole ownership of the Suburban motor vehicle is awarded to the plaintiff who shall be solely responsible for the lien balance of about $300.
8. All credit cards that allow either to charge thereon are ordered cancelled immediately. The plaintiff shall be solely responsible for the Discover card and shall hold the defendant harmless and indemnified. The defendant shall be solely responsible for the remaining credit cards in his name. CT Page 2092
 9. The defendant shall continue to maintain the $10,000 life insurance provided through his employer, naming the minor children as primary beneficiaries.
10. No allowance to prosecute is awarded.
 ___________________ HARRIGAN, J.T.R.